1  UNITED STATES DISTRICT COURT

2  SOUTHERN DISTRICT OF CALIFORNIA

3  WOODWAY USA, INC.,

   Case No.:  24-cv-1936-AGS-AHG

4  Plaintiff,

   **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF 10)**

5  v.

6  LIFECORE FITNESS, LLC d/b/a

7  ASSAULT FITNESS,

8  Defendant.

9

10  This trademark and unfair-competition case about treadmills runs on the heels of a

11  related patent-infringement case. *See Woodway USA, Inc. v. LifeCORE Fitness, Inc.*, No.

12  22-cv-0492-JO-BLM (S.D. Cal. 2022). Defendant won summary judgment in the patent

13  case, *id.* ECF 175, and now moves to dismiss some of the unfair-competition claims against

14  it here.

15  **BACKGROUND**

16  Plaintiff Woodway USA, Inc., owns the trademark "FOR THE LONG RUN."

17  (ECF 1, at 3.) This trademark is affiliated with its "non-motorized exercise treadmills" that

18  have a curved running surface, introduced in 2009 "under the trademark CURVE." (*Id.*)

19  "Since at least as early as 2010, Woodway's CURVE Treadmills have been featured in

20  various scientific and academic reports, studies, and publications" to "demonstrate,

21  measure, and assess the health or physiological benefits of the use of non-motorized

22  treadmills." (*Id.*) Woodway uses the results from these studies to advertise that "users can

23  burn up to '30% more calories' by using a CURVE-branded treadmill than by using a

24  motorized treadmill" (*id.* at 5), and that "the running surface can last 'up to 150,000 miles'

25  without the need for substitution or repair" (*id.* at 6). "[A]gencies and news commentators"

26  have been "linking" these studies to the CURVE Treadmills since "at least as early as"

27  2011 and 2012, respectively. (*See id.* at 5–6.)

28

1

1   Defendant LifeCORE Fitness, LLC, doing business as Assault Fitness, is "a direct
2   competitor of Woodway." (ECF 1, at 2.) Assault began promoting its own line of
3   non-motorized treadmills with the slogan "BUILT FOR THE LONG RUN" as well as
4   advertising that they help burn up to "30% more calories" than motorized treadmills and
5   last "up to 150,000 miles" without the need for repair or substitution. (*Id.* at 5–7.) Assault
6   uses these attributes to advertise the Assault Treadmills on its website and in promotional
7   material provided to its distributors. (*See id.* at 6–7.)

8       Woodway filed suit alleging trademark violations stemming from both the "FOR
9   THE LONG RUN" mark and the 30%-more-calories and up-to-150,000-miles advertising
10  statements. (*See* ECF 1.) Assault moves to dismiss Woodway's claims arising only from
11  Assault's use of the advertising statements: violations of the Lanham Act, 15 U.S.C. § 1051
12  *et seq.* (claims 2 through 5), California's Unfair Competition Law, Cal. Bus. & Prof. Code
13  § 17200 (claim 7), and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770
14  (claim 8). (*See* ECF 10-1.)

15                                    **DISCUSSION**

16      To survive a motion to dismiss, the complaint must contain enough facts to "state a
17  claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
18  (cleaned up). At this early stage, the Court accepts "the factual allegations in the complaint
19  as true" and construes them "in the light most favorable to the plaintiff." *GP Vincent II v.*
20  *Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023). Mere "conclusory allegations of law
21  and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v.*
22  *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

23      Claims sounding in fraud face a higher bar: they "must state with particularity the
24  circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Although the Ninth Circuit has
25  not definitively spoken as to whether Rule 9(b) applies to Lanham Act claims, the better
26  reasoned district court authority is that, where a Lanham Act claim is predicated on the
27  theory that the defendant engaged in a knowing and intentional misrepresentation, then
28  Rule 9(b) is applicable." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623,

1   634 (N.D. Cal. 2019). Since Woodway alleges Assault's violations are "deliberat[e],

2   willful[], and in bad faith" (ECF 1, at 10), and since Woodway "allege[s] a unified course

3   of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of" all the

4   claims at issue here, "the pleading as a whole must satisfy the particularity requirement of

5   Rule 9(b)," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

6   So Woodway must plead "the who, what, when, where, and how of the misconduct

7   charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The claims

8   considered here are all based on the same facts and each satisfies the who (Assault), what

9   (the caloric-expenditure and durability advertising statements), when (various dates

10  beginning in February 2017), and where (within multiple advertisements). (ECF 1, at 2,

11  6–9, 10.) The Court now turns to the "how."

12  **A.   Lanham Act Claims**

13  Woodway brings claims under two Lanham Act liability theories: false designation

14  of origin (also called "false association"), 15 U.S.C. § 1125(a)(1)(A), and false advertising,

15  *id.* § 1125(a)(1)(B).

16      **1.  *False Designation of Origin***

17  The false-designation provision seeks to deter, among other things, "confusion" "as

18  to the origin" of goods. 15 U.S.C. § 1125(a)(1)(A). Woodway must show that Assault

19  "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading

20  description, or representation of fact, which (3) is likely to cause confusion or

21  misrepresents the characteristics of his or another person's goods or services." *Freecycle*

22  *Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); *see also AECOM Energy &*

23  *Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 (9th Cir. 2018) (applying

24  these elements to a false-designation claim).

25  Among other points, Assault zeroes in on the confusion element and attacks

26  Woodway's "factual basis to show how" Assault's use of "common industry words and

27  phrases to describe its treadmills are false or misleading in fact" as to the origin of its

28  products. (ECF 10-1, at 15.) According to Assault, Woodway "fails to articulate how

3

1    consumers would be confused" by Assault's "descriptive use of common product claims,"

2    since "[c]onsumers do not associate such claims" "exclusively with" Woodway. (*Id.*)

3    Assault is right.

4        The Lanham Act's "origin of goods" provision prohibits misleading claims

5    specifically about "the producer of the tangible goods that are offered for sale," but not

6    about "the author of any idea, concept, or communication embodied in those goods."

7    *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). For example,

8    in *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009), the Federal

9    Circuit applied Ninth Circuit law and rejected an argument that the defendant was liable

10   for false designation of origin when it advertised certain basketball technology as its own

11   "innovation," even though it was plaintiff's patented technology. *Id*. at 1303–05. The

12   *Baden* court reasoned that the "innovation" advertisement referred only to "'the author of'

13   the idea or concept behind [defendant's] basketballs," which does not qualify as false

14   designation of origin under the Lanham Act. *Id*. at 1306. In other words, the claim failed

15   because plaintiff never "argued that someone other than [defendant] produces the

16   infringing basketballs, and nothing in the record indicates that [defendant] is not in fact the

17   producer of the balls." *Id*.

18       Similarly, the 30%-more-calories and 150,000-mile statements here "do not cause

19   confusion as to the [product's] origin." *See Baden Sports*, 556 F.3d at 1306. They merely

20   describe purported traits of the treadmills, without even referring to who produced them.

21   Thus, Assault's motion to dismiss the false-designation claims is granted.

22       **2.  *False Advertising***

23       The Lanham Act's false-advertising proviso prohibits misrepresentation in

24   advertising as to "the nature, characteristics, qualities, or geographic origin of" one's own

25   "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state such a

26   claim, Woodway must allege, among other things, that Assault made "a false statement of

27   fact" "in a commercial advertisement." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758

28   F.3d 1069, 1071 (9th Cir. 2014) (cleaned up). Assault says Woodway falters at this crucial

step by "fail[ing] to allege how or why or what aspect of [Assault's] product descriptions concerning its treadmills are false or misleading." (ECF 10-1, at 18.) Right again.

"To demonstrate falsity within the meaning of the Lanham Act," plaintiffs need to show that "the statement was literally false," "or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). Woodway makes no positive claim that the 30%-more-calories and 150,000-mile statements are in fact false, but instead seeks to shift the burden to Assault, pleading that Assault "has no basis in fact to directly or indirectly promote or advertise" their treadmills with these representations. (ECF 1, at 9.) That is not enough. "The plain language of [the Lanham Act], which prohibits false rather than unsubstantiated representations, requires that a plaintiff establish not merely that the defendant's claims lack substantiation but also that it is false or deceptive." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1248 (D. Ariz. 1981) (cleaned up). Thus, Woodway's claim "cannot prevail because it is a 'lack of substantiation' argument, and a false advertising claim cannot be proved on 'lack of substantiation' grounds." *Caltex Plastics, Inc. v. Elkay Plastics Co., Inc.*, No. 2:12-cv-10033 RSWL (JEMx), 2015 WL 13283255, at *5 (C.D. Cal. Feb. 4, 2015); *see also Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990) ("[A] Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof."). Assault's motion to dismiss the false-advertising claims is granted.

**B.    State-Law Claims**

Woodway also claims Assault violated two California statutes: the Consumer Legal Remedies Act and the Unfair Competition Law. (*See* ECF 1, at 14–15.)

**1.  *California Consumer Legal Remedies Act***

The CLRA prohibits a series of enumerated "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). Assault advances familiar arguments in favor of dismissing the CLRA claim: "Plaintiff fails to allege any facts at all

5

1   to show how Defendant's description of its treadmills is materially misleading in terms of

2   the characteristics and benefits." (ECF 10-1, at 200; *see also id.* at 23 ("Plaintiff has

3   provided nothing more than conclusory statements about Defendant's alleged

4   misrepresentations.").) The Court agrees that the CLRA should be dismissed, but not for

5   the reasons Assault suggests.

6        "The Supreme Court has made clear that in adjudicating a claim or issue," the Court

7   has "the authority to identify and apply the correct legal standard, whether argued by the

8   parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013). Once "an issue

9   or claim is properly before the court, the court is not limited to the particular legal theories

10  advanced by the parties, but rather retains the independent power to identify and apply the

11  proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99

12  (1991). To that end, the Court is free to "consider an issue antecedent to and ultimately

13  dispositive of the dispute before it, even an issue the parties fail to identify and brief."

14  *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439,

15  447 (1993). That's the case here: The parties failed to mention that the CLRA does not

16  apply to Woodway.

17       The CLRA provides a cause of action for "[a]ny consumer who suffers any damage."

18  Cal. Civ. Code § 1780(a). A "consumer" is "an individual who seeks or acquires, by

19  purchase or lease, any goods or services for personal, family, or household purposes." *Id.*

20  § 1761(d). "A corporation . . . cannot seek or acquire" a product "for 'personal, family, or

21  household purposes,' and the language of the statute clearly envisions a person as the

22  'individual' permitted to bring suit." *Bristow v. Lycoming Engines*, No. CIV. S-06-1947

23  LKK/GGH, 2007 WL 1752602, at *5 (E.D. Cal. June 15, 2007). In short, as a corporation,

24  Woodway does not have standing to sue under the CLRA. *See California Grocers Assn. v.

25  Bank of Am.*, 27 Cal. Rptr. 2d 396, 404 (1994) (concluding that the CLRA "does not apply"

26  because the plaintiff association of grocers was "not a consumer"); *Blair v. Mercedes-Benz

27  of N. Am., Inc.*, 914 F.2d 261 (9th Cir. 1990) (unpublished) (holding that the CLRA

28  "grant[s] standing to individuals, not to corporations").

6

## 2. *California Unfair Competition Law*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of the three 'prongs' under the UCL—(1) unlawful, (2) unfair, and (3) fraudulent—creates an independent theory of liability." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1171 (S.D. Cal. 2023) (cleaned up). Woodway brings its claim under the "unlawful" and "unfair" prongs. (*See* ECF 1, at 14.)

### a. *Unlawful*

The unlawful prong "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (cleaned up). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Ct. App. 2007). But a "plaintiff must identify the underlying law on which his UCL claim is based to plead the claim sufficiently." *Zeppeiro v. Green Tree Servicing, LLC*, No. CV 14-01336 MMM (JCx), 2014 WL 12596427, at *6 (C.D. Cal. Oct. 17, 2014).

Woodway has not specified any such underlying legal violations. Rather, it merely incorporates into its UCL claim all previous allegations in the complaint and contends that Assault's "actions complained of" are "unfair business acts or practices." (ECF 1, at 15.) These "vague allegations fail to give [Assault] adequate notice of the nature" of Woodway's UCL claim. *See Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *10 (N.D. Cal. May 10, 2010). So, the UCL claim is dismissed as to the "unlawful" prong.

### b. *Unfair*

For UCL purposes, when a plaintiff "claims to have suffered injury from a direct competitor's 'unfair' act or practice," "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws," "or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 973 P.2d at 545. "Injury to a competitor is not equivalent to injury to competition; only the

1  latter is the proper focus of antitrust laws." *Id.* at 544. Allegations that might satisfy this

2  prong include "horizontal price fixing, exclusive dealing, or monopolization." *See*

3  *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1156 (S.D. Cal. 2014).

4        Woodway doesn't include any antitrust allegations in its complaint and focuses only

5  on harm to itself, not to competition generally. (*See* ECF 1, at 10 ("Woodway has been,

6  and will continue to be, seriously and irreparably damaged."); *id.* at 12 ("Woodway has

7  been and is likely to be injured as a result of Defendant's misleading representations.").)

8  Accordingly, Woodway also fails to allege unfair business practices under the UCL.

9  **CONCLUSION**

10        Assault's motion to dismiss is **GRANTED**. Because the Lanham Act claims and

11  UCL claim "can possibly be cured by additional factual allegations," Woodway is granted

12  leave to amend those claims. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir.

13  2013). The same cannot be said about the CLRA claim, so that claim is dismissed without

14  leave to amend. *See Dinnerman v. Datto, Inc.*, No. 8:23-CV-02301-JLS-DFM, 2024 WL

15  3469043, at *6 (C.D. Cal. May 21, 2024) ("Because the corporate Plaintiffs cannot meet

16  the definition of a consumer, leave to amend would be futile."). Any amended complaint

17  must be filed by June 13, 2025. Next month's motion-to-dismiss hearing is vacated.

18  Dated:  May 23, 2025

19

20                                        Hon. Andrew G. Schopler
                                      United States District Judge

21

22

23

24

25

26

27

28

8

24-cv-1936-AGS-AHG